Filed 6/8/15  In re H.H. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re H.H., et al., Persons Coming Under the Juvenile Court Law. | |
| S.D. COUNTY HEALTH & HUMAN SERVICES AGENCY, | D066690 |
| Plaintiff and Respondent, | (Super. Ct. Nos. J518380, J518380A-B) |
| v. | |
| Christina M., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joe O. Littlejohn and Kenneth J. Medel, Judges.  Affirmed in part, reversed in part and remanded with directions.

Law Offices of Rosemary Bishop and Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

County of San Diego County Counsel Thomas E. Montgomery and John E. Philips, Chief Deputy County Counsel, Paula J. Roach, Deputy County Counsel for Plaintiff and Respondent.

Tilisha Martin and Carolyn Levenberg, under appointment by the Court of Appeal, for the Minors.

Christina M. appeals from a juvenile court judgment terminating her parental rights over her children, H.H. and J.H., under Welfare and Institutions Code[1] section 366.26. Christina contends the juvenile court prejudicially erred by (1) failing to comply with the notice requirements of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.); (2) not continuing a section 366.26 hearing until after a relative placement evaluation under section 387 was completed; and (3) finding that the "beneficial relationship" exception to adoption did not apply in this case.

We conclude the juvenile court erred when it terminated parental rights before hearing the section 387 petition on the children's placement. Because the error deprived Christina of her statutory and due process rights, we reverse the order terminating parental rights. We further conclude the court did not err when it determined ICWA did not apply. Accordingly, we affirm in part, reverse in part and remand with directions.[2]

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     In light of our disposition, we do not refer to certain facts regarding the court's decision to terminate Christina's parental rights or the conduct of the children's father, Brian H., because he is not a party to this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2012, the San Diego County Health and Human Services Agency (Agency) filed a section 300 petition alleging that H.H. came within the juvenile court's jurisdiction because in January 2011, then two-month-old H.H. was exposed to a violent confrontation between Christina M. and Brian H.

The petition stated H.H. might be a member of the Apache tribe, as Christina had once told a social worker she had Apache Indian heritage but she was not enrolled in the tribe. Christina later told the same social worker that she did not have Indian heritage. At an April 2012 hearing, Brian H. denied having American Indian ancestry. Christina testified she had "watch[ed] the video of my grandmother . . . like a documentary, saying she had Indian heritage, but she's old, so she really don't know or remember." Christina testified her grandmother did not mention membership in any specific tribe, and the grandmother could not name any person who might be involved in a tribe or might have additional information about this matter. The court ruled ICWA did not apply "based upon review of the [ICWA] form from both parents."

In May 2012, the court sustained the section 300 petition, declared H.H. a dependent of the juvenile court, removed her from parental care, and placed her in a licensed foster home. It ordered reunification services for the parents and ordered them to comply with their case plans.

In August 2012, J.H. was born. The Agency filed a section 300 petition on his behalf, alleging he faced a substantial risk of serious physical harm based on the parents'

3

past domestic violence and continued cohabitation in violation of a restraining order. Following a hearing, the juvenile court found ICWA did not apply in J.H's case. It ordered J.H. detained and placed with a nonrelative extended family member. In September 2012, H.H. and J.H. were placed in the same home. In November 2012, the court declared J.H. a dependent of the juvenile court and removed him from parental care.

In a February 2014 report, Agency sought a 60-day continuance of a scheduled section 366.26 hearing because the children's caregiver had doubts about whether to adopt the children; therefore, Agency needed more time to explore possible permanent placement options for the children. Agency pointed out the maternal grandmother had just begun her relative home assessment to be considered for placement. The social worker stated the parents' visits with the children continued to be inconsistent, and Christina's current whereabouts were unknown, although the maternal grandmother reported Christina still lived with Brian H. The court granted the continuance until May 6, 2014.

In May 2014, Agency filed a section 387 petition to remove the children from their non-related extended family member placement and requesting the children be placed in foster care. In Agency's May 14, 2014 addendum report, the social worker stated that in February 2014, the children's caregiver "expressed concern regarding the children being placed with the maternal grandmother[, who] would go months without seeing the children if she became upset with the caregiver." The social worker spoke with the maternal grandmother on May 1, 2014, regarding her desire to adopt the children

4

versus provide them with guardianship, and the maternal grandmother "explained she would do whatever she needed to do to get the children and that she wanted to provide for them permanently." The social worker stated Agency was assessing the maternal grandmother for placement: "She is currently completing a Relative Home Assessment and a waiver for criminal history will need to be completed before it can be determined if the home can be approved. . . . Agency will continue to assess the maternal grandmother's protectiveness of the children and her commitment to providing a permanent home for the children." The social worker concluded: "The children have been assessed by the Agency as generally adoptable and are currently specifically adoptable because they are in a home with an approved home study who has expressed interest in adopting them."

On September 24, 2014, Christina's counsel sought a continuance of the section 387 hearing and the section 366.26 hearing to allow the maternal grandmother to complete the required background checks for Agency's placement evaluation. Agency's counsel explained that "the maternal grandmother ha[d] been aware of the relative home assessment and its process since January and ha[d] dragged her feet throughout this entire process." Counsel also pointed out the juvenile court had already granted one continuance for the purpose of finalizing the placement evaluation. The court asked Agency's counsel to state on the record its efforts to evaluate the maternal grandmother's home, including its assessment of individuals who would have substantial contact with the children. Agency's counsel responded the social worker "not only maintained contact with the maternal grandparents but she also continuously explained what the process

5

entailed, and she attempted to contact the adults that the grandmother listed as support. [¶] She then also advised all the parties that they needed to livescan and they needed to interview because the process does take a while, and maternal grandmother just continued to drag her feet and to this day we're still awaiting an interview from one of the adults, and also waivers are pending at this time."

Agency's counsel further explained: "The waivers are important in this case because all three adults have extensive criminal history, and once the waivers are approved, the social worker needs to review them, her supervisor needs to approve them, so it's very important that the waivers are completed to make sure that we can waive any criminal history in this case for the adults." The court asked if the maternal grandmother herself had been cleared for placement, and Agency's counsel replied that the maternal grandmother had initially "requested to have an attorney present after her first interview, and then there was some difficulty in getting that set up, and then she eventually decided not to have an attorney present and they were able to schedule for August [2014]." Agency's counsel stated one more individual who would have significant contact with the children needed to be interviewed, and afterwards it would take approximately six weeks for that person's evaluation to be processed. Agency's counsel explained that Agency had lost contact with this individual since approximately March 2014.

Christina's counsel argued in favor of the continuance: "[T]here's been so much effort in trying to evaluate this home and it seems like we're nearly there. We just have one more interview to do. We need the waivers back." The court countered: "The person who is to respond, I can't order that person. That person's not before the court . . .

6

and I can't even order a policeman to go out and pick up somebody if we don't know where that person is and that person isn't responding, and that's basically what we have here.  [¶] . . . your position loses merit when a person who is going to be integrally involved with this minor can't be located and needs to be vetted before we can proceed."  The court denied the continuance:  "And I understand why [Christina] is doing it and that's why I took the time to see where the mix-up was.  It sounds like that I can't put the blame on the Agency; that's what it sounds like to me.  Even if I say grandmother's already there, there's still a person who hasn't been interviewed.  [¶] So after having considered your request thoroughly and investigated thoroughly, I'm not prepared to grant your request for a continuance for that purpose."

After the close of evidence on the section 366.26 hearing, the court terminated parental rights.  It reviewed various Agency reports and granted a six-week continuance on the section 387 petition, stating:  "I want to bring that issue back and I'm finding good cause because there is a person who is a relative who is available, but she's not able to, and that is because she has not been cleared.  [¶] I'm not going to weigh causation or who's at fault at this particular point in time.  I'm simply saying I'm giving that leeway on the [section] 387 [petition]."  At that same hearing, the court ruled Agency did not need to provide notice to comply with ICWA because the court "ha[d] reason to know that the children [were] not Indian children."

At a December 1, 2014 section 387 hearing, the juvenile court sustained the section 387 petition, finding there was no relative or noncustodial parent available and

7

willing to care for the children.[3]  The court ordered the children be continued as dependents of the juvenile court.

## DISCUSSION

### I.

Christina contends Agency and the juvenile court failed to conduct an inquiry or provide notice as required by ICWA, and therefore we should remand the case for Agency to undertake the proper inquiry and notice.

Christina concedes:  "It is true [Christina] twice stated she did not have Indian heritage, once after a second verbal inquiry and once before the second detention hearing for the younger minor, after the trial court had made its finding the ICWA did not apply.  However, these statements are less reliable than [Christina's] sworn testimony, in which she provided specific information as to her Indian heritage."  Christina contends Agency and juvenile court failed to conduct an inquiry or provide notice as required by the ICWA, and therefore we should remand the case for Agency to undertake the proper inquiry and notice.

Agency argues that Christina is precluded from asserting an ICWA challenge in this appeal because she did not raise it on an appeal from the May 10, 2012 dispositional order.  The Courts of Appeal have split on the issue of whether the doctrine of forfeiture applies to a parent's belated claim of ICWA violations.  (*In re Pedro N.* (1995) 35 Cal.App.4th 183, 189-191 [holding a mother foreclosed from raising the issue of

_____

[3]     We grant Agency's request for judicial notice of the court's minute order of the December 1, 2014 hearing.  (Evid. Code, § 452, subd. (a).)

8

improper notice under ICWA on appeal from termination of her parental rights because she did not appeal from the dispositional order stating ICWA was inapplicable]; compare *In re Marinna J.* (2001) 90 Cal.App.4th 731, 739 [holding parents' ICWA violation claim cognizable on appeal although not raised until after parental rights were terminated].)[4] Because the court made another ICWA finding at the section 366.26 hearing, Agency's forfeiture argument is misplaced.

Even if the court had not made that ruling, however, we would deem the argument forfeited. This court has previously held that the forfeiture doctrine is inapplicable in the context of ICWA notice. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 251.) Here, we may assume, without deciding, that notwithstanding Christina's belated objection, she has not forfeited her right to assert an ICWA violation because we conclude that (1) the juvenile court properly found ICWA inapplicable based on the conflicting evidence before it (see discussion, *post*) and (2) although the juvenile court had an "affirmative and continuing" duty to inquire about whether the children were or might have been Indian (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(a)), it was not required to revisit the issue absent new and credible evidence of possible Native American ancestry. (See § 224.2, subd. (b); *In re Aaliyah G.* (2003) 109 Cal.App.4th 939, 942.)

---

4    This issue is currently on review before the California Supreme Court. (*In re Isaiah W.* (2014) 228 Cal.App.4th 981, review granted Oct. 29, 2014, No. B250231.)

"ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes and families by establishing certain minimum federal standards in juvenile dependency cases." (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538 (*Shane G.*).) An Indian child is defined as any unmarried person who is under age 18 and is either (a) a member of an Indian tribe, or (b) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4).)

ICWA imposes a duty to give the child's tribe notice of the pending proceedings and provides the tribe a right to intervene "[w]hen a court 'knows or has reason to know that an Indian child is involved' in a juvenile dependency proceeding." (*Shane G.*, *supra*, 166 Cal.App.4th at p. 1538; § 224.2, subd. (a).) "Alternatively, if there is insufficient reason to believe a child is an Indian child, notice need not be given." (*Shane G.*, at p. 1538.) Notice requirements are meant to ensure that the child's Indian tribe will have the opportunity to intervene and assert its rights in the proceedings. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.)

Section 224.3, subdivision (a) imposes an "affirmative and continuing duty" on the court and the Agency "to inquire whether a child for whom a petition . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings." Subdivision (b) states that circumstances that may provide reason to know the child is a Native American child include the following: "(1) A person having an interest in the child . . . provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe. (2) The residence or domicile of the child, the child's

10

parents, or Indian custodian is in a predominantly Indian community. (3) The child or the child's family has received services or benefits from a tribe or services that are available to Indians from tribes or the federal government, such as the Indian Health Service." (See also Cal. Rules of Court, rule 5.481(a)(5).)

If these or other circumstances indicate a child may be a Native American child, the social worker must further inquire regarding the child's status, including by interviewing the parents, extended family members or any other person who can reasonably be expected to have information concerning the child's membership status or eligibility. (§ 224.3, subd. (c).) If the inquiry leads the social worker or the court to know or have reason to know a Native American child is involved, the social worker must provide notice to the tribe and the Bureau of Indian Affairs. (*Id.*, subd. (d); *Shane G.*, *supra*, 166 Cal.App.4th at pp. 1538-1539.) More than a bare suggestion of Native American ancestry is needed before notice is required. (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.)

We conclude that proper inquiry was conducted to determine whether the children were Native Americans within the meaning of ICWA. All Christina knew of the matter was that her mother had a possible connection to the Apache tribe. Further, as Christina concedes, she twice stated on the record she did not have Indian heritage. Under this circumstance, the court was not required to give notice. The evidence in this case is akin to that which this court found insufficient to invoke the notice requirement in *Shane G.*: "Here, Agency's inquiry produced no information Shane was an Indian child. The social worker interviewed the maternal grandmother who indicated Shane's great-great-great-

11

grandmother was a Comanche princess.  However, no one in the family ever lived on a reservation, attended an Indian school, participated in Indian ceremonies or received services from an Indian health clinic."  (*Shane G*, *supra*, 166 Cal.App.4th at p. 1539.)

On this record, the court was not required to provide ICWA notice.  (§ 224.3, subd. (d); *Shane G.*, *supra*, 166 Cal.App.4th at p. 1539 [an attenuated, speculative or vague claim of Indian heritage is insufficient to trigger notice requirements under ICWA].)  "Where, as here, the record is devoid of any evidence a child is an Indian child, reversing the judgment terminating parental rights for the sole purpose of sending notice to the tribe would serve only to delay permanency for a child . . . rather than further the important goals of and ensure the procedural safeguards intended by ICWA."  (*Shane G.,* at p. 1539.)

## II.

Christina contends the court committed reversible error by continuing the hearing regarding a relative placement under section 387 without also continuing the section 366.26 hearing.  She claims that by doing so, the court deprived her of standing at the subsequent hearing, where she otherwise could have advocated for a more favorable permanent plan for the children.  She specifically argues the juvenile court's action "resulted in an untimely weakening of the statutory relative preference, deprived the parents of the right to participate in the section 387 [hearing], and prematurely foreclosed the option of guardianship with the maternal grandmother as a permanent plan."

Agency concedes the juvenile court erred procedurally, but claims the error was to grant the continuance on the section 387 petition, instead of denying it.  Agency argues

12

any error was harmless because the maternal grandmother was not a proper placement option for the children as the court subsequently ruled, and she had sought adoption of the children, not guardianship.

We review the juvenile court's grant of a continuance for abuse of discretion. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 605.) This court has stated: "[A] placement decision under section 387 has the potential to alter the court's determination of the child's best interests and the appropriate permanency plan for that child, and thus may affect a parent's interest in his or her legal status with respect to the child." (*In re. H.G.* (2006) 146 Cal.App.4th 1, 10.) In interpreting our holding in that case, the California Supreme Court stated, "[B]ecause the [juvenile] court failed to properly consider the request for placement with relatives, the order terminating parental rights was at least premature and possibly erroneous: The placement of a dependent child with relatives can, under certain circumstances, make the termination of parental rights unnecessary." (*In re. K.C.* (2011) 52 Cal.4th 231, 237.)

As a matter of statutory right and procedural due process, we conclude the court erred by terminating Christina's parental rights before deciding the issue of relative placement. In so doing, the court deprived Christina of an opportunity to be heard at the placement hearing. The juvenile court is required to consider the parents' wishes when determining whether relative placement is appropriate. (§ 361.3, subd. (a)(1), (2) [the court is required to consider the wishes of the parent and assess the best interest of the child].) We also point out the court's procedure deprived Christina of her right to appeal

13

any order denying placement pursuant to section 387.  In light of the above, we cannot agree with Agency's speculation that the error was harmless.

Because we reverse the order denying Agency's petition for failure to comport with statute and due process rights, we must also reverse the order under section 366.26 terminating parental rights and selecting adoption as the permanent plan.  (Cf. *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1801 [addressing a section 388 hearing]; see also *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1416 ["In the chronology of these events, a fair hearing on the section 388 petition was a procedural predicate to proceeding to the section 366.26 hearing."].)  As in *In re Hashem H.*, "[i]t is with reluctance that we reverse the orders . . . , for each delay in reaching a permanent plan 'can be a lifetime to a young child.' "  (*Id.* at p. 1801, quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)

In light of our disposition, we need not address other contentions Christina raises on appeal.

14

## DISPOSITION

We affirm the juvenile court's judgment finding that the Indian Child Welfare Act does not apply.  We reverse the findings and orders under Welfare and Institutions Code section 366.26.  We vacate the findings and orders of the Welfare and Institutions Code section 387 hearing held on December 1, 2014.  The court is directed to hold a hearing on Christina M.'s request to place the children with their grandmother under Welfare and Institutions Code sections 387 and 361.3, and thereafter hold a new section 366.26 hearing.


O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.