Filed 10/30/15  In re Grace G. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re GRACE G., a Person Coming Under the Juvenile Court Law. | B263130 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROCHELLE G.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK72230) |

APPEAL from an order of the Superior Court of Los Angeles County.  Steven R. Klaif, Referee.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

Rochelle G. (mother) appeals from a juvenile court order terminating her parental rights under Welfare and Institutions Code section 366.26.[1] The only issue mother raises on appeal is whether the trial court erred in failing to order the Los Angeles County Department of Children and Families (DCFS) to provide notice of the proceedings to the Blackfoot Indian Tribe pursuant to the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901, et seq.). We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of the sole issue raised on appeal, we only briefly summarize the factual background of the underlying proceedings. We discussed this background in a previous appeal in this matter (*In re Grace G.* (Mar. 27, 2015, B257227) [nonpub. opn.]).[2] Grace was born in March 2013. Mother was incarcerated at the time. Grace was born with several critical medical problems and was later diagnosed with Down Syndrome. Grace is mother's tenth child. Mother had either lost or relinquished custody of all nine of her other children. She knew Grace's father only as "Keith," and had no other information about him. Mother had a long history of drug abuse, mental illness, and an inability to adequately care for her children. On March 10, 2015, the juvenile court terminated mother's parental rights.

### ICWA Proceedings

In a March 2013 detention report, DCFS reported mother said she was in the process of getting blood work done to confirm her Native American heritage. She said her grandfather was Native American, but she did not know the tribe. The same month, mother completed a Parental Notification of Indian Status form on which she indicated her grandmother's uncle, "Uncle Joe," who lived in Altadena, was a member of the Blackfoot tribe. At the detention hearing, mother, through counsel, indicated she did not know if she was eligible to be an enrolled member in the Blackfoot tribe. The court

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] In the previous appeal we affirmed a juvenile court order denying mother's section 388 petition, seeking a change in the court's orders to allow her reunification services and to liberalize visitation.

2

asked if there was any information mother could provide about "Uncle Joe or other relatives," or, "in other words, can we contact them?"  Mother responded that these relatives were dead and she had no other information about how to contact other relatives who might have information.  The court concluded that in light of this absence of information, there was no reason to know or believe that Grace is an Indian child.

In a May 2013 jurisdiction and disposition report, DCFS reported mother stated her grandfather, Philip Ford Gray Walker, had Native American ancestry.  Mother again said she was getting blood work to "confirm" her tribal membership.  However, she had no other information.  The social worker also reported that based on case history information from Kern County, "Blackfeet Native American Ancestry was determined 'Not Eligible' on 11/24/2007," for one of Grace's older half-siblings.  The social worker stated dependency court orders from July 1, 2008, indicated mother had reported she had no Native American Indian ancestry.  The social worker also noted the Kern County dependency court had determined on December 10, 2007, that ICWA did not apply to "this family."

Mother did not raise the ICWA issue again, including in the first appeal considered by this court.  Following the termination of her parental rights, mother filed a notice of appeal.  The notice indicated she was appealing from the section 366.26 order terminating her parental rights on March 10, 2015.

## DISCUSSION

### I.   The Juvenile Court Did Not Err in Concluding There was No Reason to Know or Believe Grace is an Indian Child

Mother contends the trial court erred in finding ICWA notice was not required because there was no reason to know an Indian child was involved, and DCFS improperly failed to give notice to the Blackfoot tribe.  We find no error.

As an initial matter, we address the DCFS contention that this Court lacks jurisdiction to consider mother's argument because her notice of appeal did not reference ICWA.  We disagree.

3

Pursuant to California Rules of Court, rule 8.405(a)(3), we must liberally construe a parent's notice of appeal in favor of its sufficiency. (*In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1017.) Under ICWA, when there is reason to believe the child is an Indian child, notice must be sent to the relevant tribes for every hearing until it is determined that the child is not an Indian child. (§ 224.2, subd. (a)(3); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 261.) Mother's notice of appeal identifying only the order terminating her parental rights may be liberally construed as encompassing a challenge to the failure to provide notice to any relevant tribes for that hearing. We therefore consider mother's appeal.[3]

"ICWA furthers the federal policy ' " 'that, where possible, an Indian child should remain in the Indian community . . . .' " [Citation.]' [Citation.] It requires that notice of the dependency proceeding be given to the relevant tribe or tribes whenever 'the court knows or has reason to know that an Indian child is involved. . . .' (25 U.S.C. § 1912(a).) The notice must include the names (including maiden, married, and former names), current and former addresses, birth dates, and places of birth and death of the child's parents, grandparents, and great-grandparents, 'if known.' (25 C.F.R. § 23.11(a), (d) (2013); see Welf. & Inst. Code, § 224.2, subd. (a)(5).) The court and DCFS have a continuing duty to inquire about the possible Indian status of the child. (§ 224.3, subds. (a) & (c).) [¶] We review the trial court's findings whether proper notice was given under ICWA and whether ICWA applies to the proceedings for substantial evidence." (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1250-51; § 224.3, subd. (d).)

"ICWA defines an 'Indian child' as a child who is either (1) 'a member of an Indian tribe' or (2) 'eligible for membership in an Indian tribe and . . . the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) Conversely, if the child is not a

---

[3] The parties have not raised the issue currently pending before the California Supreme Court in *In re Isaiah W.* (2014) 228 Cal.App.4th 981, review granted Oct. 29, 2014, S221263: whether a parent's failure to appeal from a finding that ICWA notice is not required precludes the parent from subsequently challenging the finding in an appeal from a much later order terminating parental rights.

tribe member, and the mother and the biological father are not tribe members, the child simply is not an Indian child.

" ' "The circumstances that may provide probable cause for the court to believe the child is an Indian child include, but are not limited to, the following:  [¶]  (A) A person having an interest in the child . . . informs the court or the county welfare agency . . . or provides information suggesting that the child is an Indian child;  [¶] (B) The residence of the child, the child's parents, or an Indian custodian is in a predominantly Indian community; or  [¶]  (C) The child or the child's family has received services or benefits from a tribe or services that are available to Indians from tribes or the federal government, such as the Indian Health Service." [Citations.]  If these or other circumstances indicate a child may be an Indian child, the social worker must further inquire regarding the child's possible Indian status.  Further inquiry includes interviewing the parents, Indian custodian, extended family members or any other person who can reasonably be expected to have information concerning the child's membership status or eligibility.  [Citation.]  If the inquiry leads the social worker or the court to know or have reason to know an Indian child is involved, the social worker must provide notice. [Citations.]'  [Citation.]" (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.)

In this case, there were no circumstances suggesting Grace G. is an Indian child. Mother's first indication of Indian heritage was her statement that she had Native American heritage she was attempting to confirm with "blood work."  She also identified Grace's great-grandmother's uncle as a member of the Blackfoot tribe.  Mother had almost no information about this relative, knew his name only as "Uncle Joe," and she informed the court there was no one who could be interviewed to provide additional information.  No further inquiry was reasonably possible.  At that point, the juvenile court concluded it had no reason to believe Grace is an Indian child.  Subsequently, mother informed DCFS that her grandfather—Grace's great-grandfather—had Native American ancestry.  However, except for a name, mother had no other information. (*In re J.D.* (2010) 189 Cal.App.4th 118, 125 [paternal grandmother told Department her grandmother told her of their Native American ancestry; grandmother did not know

which tribe and had no relatives to provide additional information; too vague and speculative to give court reason to believe children were Indian children].)  In addition, records from previous dependency proceedings concerning one of Grace's siblings indicated the sibling had been found not eligible for membership in the Blackfoot tribe, and mother had previously indicated she did *not* have Indian ancestry.

"[B]oth the federal regulations and the California Welfare & Institutions Code require more than a bare suggestion that a child might be an Indian child."  (*In re Jeremiah G., supra*, 172 Cal.App.4th at p. 1520.)  There was no information that reasonably would suggest Grace is an Indian child, and mother was unable to provide any additional information from which further inquiry could follow.  (See *In re Z.N.* (2009) 181 Cal.App.4th 282, 298 [mother's belief that her grandmothers were Indian did not suggest her children were members or eligible for membership as children of a member; mother was not registered and did not believe her mother had any tribe affiliation].)  The additional investigation DCFS conducted only suggested Grace is *not* an Indian child, as mother had previously disclaimed Indian heritage, and records indicated an older sibling had been found not to be eligible for membership in the Blackfoot tribe.  "[I]f there is insufficient reason to believe a child is an Indian child, notice need not be given."  (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538.)  Such was the case here.

## DISPOSITION

The juvenile court order is affirmed.


BIGELOW, P.J.

We concur:



RUBIN, J.                    GRIMES, J.


6