172 Cal.App.4th 1514 (2009)
___ Cal.Rptr.3d ___
In re JEREMIAH G., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, Plaintiff and Respondent,
v.
JOANN W., Defendant and Appellant.
No. C058223.
Court of Appeals of California, Third District.
April 14, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*1516 Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.
Robert A. Ryan, County Counsel, and Vicki J. Finucane, Deputy County Counsel, for Plaintiff and Respondent.

OPINION
SCOTLAND, P. J.
Joann W. (mother) appeals from the dispositional orders of the juvenile court removing her son, Jeremiah G., from her custody and denying her reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b). (Further section references are to this code.) Mother, who has a history of drug abuse and has previously failed to reunify with her three other children, claims the considerations underlying section 361.5, subdivision (b) do not apply in this case, and the dispositional orders did not comply with the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.).
(1) We publish this opinion to emphasize, again, what we thought that our court made clear in In re O.K. (2003) 106 Cal.App.4th 152 [130 Cal.Rptr.2d 276]. In a juvenile dependency proceeding, a claim that a parent, and thus the child, "may" have Native American heritage is insufficient to trigger ICWA notice requirements if the claim is not accompanied by other information that would reasonably suggest the minor has Indian ancestry. Here, the assertion that there was a "possibility" the great-grandfather of the minor's father "was Indian," without more, was too vague and speculative to require ICWA notice to the Bureau of Indian Affairs. (106 Cal.App.4th at p. 157.) This is particularly so in this case because the minor's father, who made the assertion, later retracted it, telling the juvenile court that he "didn't actually have [Indian ancestry]." Thus, mother's appellate claim of ICWA error lacks merit.
*1517 In the unpublished part of this opinion, we reject mother's challenge to the denial of reunification services. Consequently, we shall affirm the juvenile court's orders.

PROCEDURAL HISTORY AND FACTUAL BACKGROUND
Jeremiah was born in October 2007, testing positive for cocaine. He was mother's third child born testing positive for cocaine. The other two had been removed from her care several years before, and her parental rights to them were terminated. Mother admitted using cocaine during the pregnancy with Jeremiah and had a drug-related criminal history dating back to 1989.
Mother was offered voluntary services but failed to utilize them. She missed appointments, continued to test positive for cocaine, failed to participate in STARS (specialized treatment and recovery services), refused to drug test, and did not visit Jeremiah.
A section 300 petition was filed, alleging mother had failed to protect Jeremiah, in that she exposed him to cocaine in utero, she had a long and continuing history of substance abuse, she had failed to participate in voluntary services, and she had two other children for whom her parental rights had been terminated.
At the detention hearing on November 15, 2007, Jeremiah's alleged father, A.G. (father), had not yet been notified of the proceedings. The juvenile court found the evidence supported the allegations of the section 300 petition, and Jeremiah was ordered detained.
Father was located after the detention hearing. He had not lived with mother at the time of Jeremiah's conception, and he was not certain that he was Jeremiah's father. But he was willing to care for Jeremiah if paternity were established.
In her interview for the jurisdictional/dispositional report, mother admitted that she had used cocaine during her pregnancy, that her cocaine use during the pregnancy began only three days after her release from prison, that two of Jeremiah's half siblings had also tested positive for cocaine at their births, that three of her children were removed from her custody because of her substance abuse, and that she failed to reunify with all of those children. Although mother agreed she had not rehabilitated from her substance abuse problem and needed help, she said she had been "doing good for a week and [a] half." This in turn led her to believe that her substance abuse did not place her child at risk.
*1518 Mother failed to utilize the voluntary services offered to her, despite her initial agreement to participate in services. She missed numerous appointments, did not appear for meetings with the social worker on October 26 or October 27, 2007, and missed her first appointment with early intervention specialists on November 6, 2007. When she was assessed, she was referred to a residential treatment program and to STARS for supportive services and testing. She was also referred for drug testing three times per week and a 12-step support program. At her intake appointment at STARS on November 15, 2007, mother tested positive for cocaine, and she did not participate in any additional STARS services. She did not attend orientation at the residential treatment center, and she did not drug test. She also did not visit with Jeremiah.
The social worker recommended that Jeremiah be removed from mother's home and that mother be denied reunification services. The report recommended denial of services because such services had been terminated previously with respect to three of Jeremiah's half siblings, and mother's parental rights were terminated as to two of those half siblings. Services were not recommended for father because paternity had not yet been established.
When an addendum report was prepared on December 20, 2007, mother had entered an inpatient substance abuse treatment facility but tested positive for cocaine and marijuana on December 4 and 11. Her two visits with Jeremiah had gone well, and she had begun a parenting class, anger management classes, and a victim impact awareness program through her residential treatment program. Mother left the treatment program on January 14, 2008, because she had been diagnosed with congestive heart failure due to her cocaine use. She then attended a mental health counseling session and was being assessed for an outpatient program.
Father's paternity was declared on December 6, 2007. On that same day, father was asked if he had any Native American heritage. He answered: "That's a possibility. That needs to be researched. [¶] ... [¶] ... My great grandfather was Indian. I don't know if he was part of a tribe or not." Thus, the juvenile court asked appointed counsel to assist father in filling out the "Parental Notification of Indian Status" form (former JV-130). On the form, father indicated he might have Indian ancestry.
The juvenile court directed the Sacramento County Department of Health and Human Services (the Department) to notify the Bureau of Indian Affairs (BIA). The court also directed father to fill out a questionnaire regarding his Indian ancestry.
Father began participating in visits, counseling, and drug testing. The social worker recommended that father receive reunification services.
*1519 On December 27, 2007, father filled out a second former JV-130 form and stated he did not have any Indian heritage. Accordingly, at a hearing on December 27, 2007, attended by mother, father, and their respective attorneys, the juvenile court found that father had no Native American heritage.
A combined jurisdictional and dispositional hearing was held on February 4, 2008, attended by father, mother, and counsel. The issue of Indian heritage was the first matter addressed by the juvenile court. Noting that father had claimed possible Indian heritage on December 6, 2007, the court inquired whether notice had been sent to the BIA. The social worker responded that, on December 27, 2007, the court had found father did not have Native American heritage, based on the fact that father "decided that he didn't actually have it." When asked to clarify father's position, father's counsel stated: "[F]ather is saying ... that he did at first claim that there was a possibility, but then that he retracted that and said that he was not and that's possibly what happened on the 27th when there was  it was discussed that the father does not have Indian heritage." At that point, everyone agreed father does not have Native American heritage.
Noting that neither parent was claiming Native American heritage, the juvenile court found that Jeremiah is not an Indian child within the meaning of ICWA. The court denied reunification services to mother based on the fact that such services had previously been terminated regarding Jeremiah's half siblings and that mother's parental rights had been terminated as to two of Jeremiah's half siblings. The court ordered reunification services be provided to father.

DISCUSSION

I[*]

II
Mother next contends that the trial court erred by "issuing dispositional orders without providing notice of the dispositional hearing to the appropriate Indian authorities as required by the ICWA." She claims the notice requirements of ICWA were triggered when father stated his great-grandfather might be of Native American ancestry, and father filled out the former JV-130 form indicating that as well. We disagree.
*1520 ICWA was enacted "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children `in foster or adoptive homes which will reflect the unique values of Indian culture ....'" (In re Levi U. (2000) 78 Cal.App.4th 191, 195 [92 Cal.Rptr.2d 648]; see 25 U.S.C. § 1902; Mississippi Choctaw Indian Band v. Holyfield (1989) 490 U.S. 30 [104 L.Ed.2d 29, 109 S.Ct. 1597].)
(2) "When a court `knows or has reason to know that an Indian child is involved' in a juvenile dependency proceeding, a duty arises under ICWA to give the Indian child's tribe notice of the pending proceedings and its right to intervene. [Citations.] Alternatively, if there is insufficient reason to believe a child is an Indian child, notice need not be given. [Citations.]" (In re Shane G. (2008) 166 Cal.App.4th 1532, 1538 [83 Cal.Rptr.3d 513].)
(3) ICWA defines an "Indian child" as a child who is either (1) "a member of an Indian tribe" or (2) "eligible for membership in an Indian tribe and ... the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) Conversely, if the child is not a tribe member, and the mother and the biological father are not tribe members, the child simply is not an Indian child.
(4) "`The circumstances that may provide probable cause for the court to believe the child is an Indian child include, but are not limited to, the following: [¶] (A) A person having an interest in the child ... informs the court or the county welfare agency ... or provides information suggesting that the child is an Indian child; [¶] (B) The residence of the child, the child's parents, or an Indian custodian is in a predominantly Indian community; or [¶] (C) The child or the child's family has received services or benefits from a tribe or services that are available to Indians from tribes or the federal government, such as the Indian Health Service.' [Citations.] If these or other circumstances indicate a child may be an Indian child, the social worker must further inquire regarding the child's possible Indian status. Further inquiry includes interviewing the parents, Indian custodian, extended family members or any other person who can reasonably be expected to have information concerning the child's membership status or eligibility. [Citation.] If the inquiry leads the social worker or the court to know or have reason to know an Indian child is involved, the social worker must provide notice. [Citations.]" (In re Shane G., supra, 166 Cal.App.4th at pp. 1538-1539.)
However, both the federal regulations and the California Welfare and Institutions Code require more than a bare suggestion that a child might be an Indian child. For example, in In re O.K., supra, 106 Cal.App.4th 152, the father's mother told the trial court that the father "`may have Indian in him. I *1521 don't know my family history that much, but where were [sic] from it is that section so I don't know about checking that.'" (Id. at p. 155.) This court held the assertion was "insufficient to give the court reason to believe that the minors might be Indian children." (Id. at p. 157.)
Similarly, here there was no information that reasonably would suggest Jeremiah had Indian heritage. At the December 6 hearing, father told the juvenile court he might have some Indian heritage and the matter needed to be researched. But he did not mention any tribe name or even know if his great-grandfather had been a member of a tribe. Mother denied any Indian heritage. Three weeks later, father told the Department and the court that he did not have any Indian heritage. At the February 4 jurisdictional/dispositional hearing, upon inquiry from the court, father's counsel clarified that although father had initially claimed he might have Indian ancestry, he had retracted that claim and did not have any Indian heritage. Father was present at the hearing and represented by counsel. Because father retracted his claim of Indian heritage, and because there was no other basis for suspecting that Jeremiah might be an Indian child, the trial court properly proceeded without ICWA notice.

DISPOSITION
The orders are affirmed.
Sims, J., and Nicholson, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I.
[*] See footnote, ante, page 1514.