Filed 3/14/14  In re Harmony B. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re HARMONY B., a Person Coming Under the Juvenile Court Law. | B251467 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALIYAH B., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK89251) |

APPEAL from an order of the Superior Court of Los Angeles County, Akemi Arakaki, Judge.  Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Aliyah B. (mother) appeals from the order terminating parental rights to her two-year-old daughter Harmony. Mother contends the juvenile court erred by finding the Indian Child Welfare Act (ICWA) did not apply in this case and declining to order notice pursuant to ICWA. Though mother initially indicated Harmony may have Indian ancestry through the maternal grandmother, upon further inquiry by the juvenile court, mother conceded she knew of no one in her family with such ancestry. Mother's repudiation of her initial claim is sufficient to sustain the court's finding that ICWA did not apply. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

1.      *Detention, Jurisdiction and Order Terminating Parental Rights*

In August 2011, the Los Angeles County Department of Children and Family Services (Department) filed a petition pursuant to Welfare and Institutions Code[1] section 300 alleging mother and then-infant Harmony's father engaged in a violent altercation in which father struck mother, bruising her mouth, and mother brandished a box cutter at father. At the time, mother, also a dependent minor, resided with Harmony in a foster home.[2] The juvenile court found the parents' conduct endangered Harmony and ordered the baby removed from father's custody and released to mother at her foster home. On September 2, 2011, the court declared Harmony a dependent and placed her in parental custody, provided the parents lived separately and with services in place.

---

[1]      Unless otherwise indicated, statutory references are to the Welfare and Institutions Code.

[2]      Mother was adjudicated a dependent of the juvenile court in 2009 based on the physical and sexual abuse and neglect she endured at the hands of her father. Her mother's whereabouts were unknown.

On September 23, 2011, the Department filed a supplemental section 387 petition to detain Harmony based on the parents' ongoing domestic violence in the child's presence, mother's diagnosed bipolar disorder, and mother's failure to adhere to her prescribed psychotropic medication regiment. The decision to detain Harmony was met with an alarming outburst by the parents, both of whom had to be restrained by security and escorted from the building. Mother punched three holes in the wall and father threatened his gang "would handle everything." The foster mother also reported concerns about mother neglecting Harmony by not dressing her appropriately for the weather and walking the streets at night with the baby. The court sustained the supplemental petition, removed Harmony from the parents' custody, and ordered further reunification services. Harmony was placed with a new foster mother. Mother later moved to a group home.

Despite initial progress with reunification services, the parents' violent confrontations continued, culminating in an altercation involving a box cutter in the lobby of a domestic violence counseling center. Mother also reportedly engaged in verbal abuse and threatened to harm other residents of her group home. In August 2012, mother went absent without leave and stopped visiting Harmony. On December 17, 2012, the court terminated reunification efforts and referred the matter for a section 366.26 hearing to terminate parental rights in connection with a permanent plan for adoption.

On August 26, 2013, the court held the section 366.26 hearing. Mother remained absent without leave and, apart from a single visit in May, she had not visited Harmony. An adoptive home study was approved for Harmony's foster mother, who expressed a strong desire to adopt Harmony and with whom Harmony had resided since May 2012. With the concurrence of Harmony's attorney and father, the juvenile court terminated parental rights. Mother appealed.

2.     *Facts Related to the Indian Child Welfare Act*

Upon the initial detention, on August 5, 2011, the Department interviewed Harmony's maternal grandfather and paternal grandmother. Both stated their families had no Indian heritage. However, on August 8, 2011, mother filed a Parental Notification of Indian Status form, on which she checked a box indicating "I may have Indian ancestry" and next to which she wrote "MGM," presumably referring to the maternal grandmother. Mother did not provide a name of tribe or any other information concerning possible Indian heritage.

At the August 8, 2011 detention hearing, the juvenile court addressed the applicability of ICWA, inquiring of mother as follows: "The mother states that she may have Indian ancestry. Do you know who would know about that? Who do you know is the member?" Mother responded, "I don't know." The court concluded, "the mother has no reason to know . . . that the child would be eligible, and I will find that this is not an I.C.W.A. case . . . ." Consistent with these proceedings, the court's minute order states: "Mother claims possible American Indian heritage. After further inquiry, the court does not have a reason to know that this is an Indian child, as defined under ICWA. [¶] Father claims no American Indian heritage. [¶] The court finds that this is not an ICWA case as to the parents." (Capitalization omitted.)

## DISCUSSION

Mother contends the juvenile court erred by finding ICWA did not apply in this case and by not requiring the Department to serve notice pursuant to ICWA. We conclude the court's finding was supported by the evidence.

"Congress enacted ICWA in 1978 to protect Indian children and their tribes from the erosion of tribal ties and cultural heritage and to preserve future Indian generations. [Citations.] Because ' "the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents" ' [citation], a tribe has the right to intervene in a state court dependency proceeding at any time [citation]." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848.)

4

"Under ICWA, a party seeking foster care or termination of parental rights must notify an Indian child's tribe of the pending proceedings and of its right to intervene." (*In re J.D.* (2010) 189 Cal.App.4th 118, 123.) ICWA provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner . . . ." (25 U.S.C. § 1912(a).) "ICWA does not require inquiry where no evidence of Indian ancestry is presented." (*In re J.D.,* at p. 123.)

In 2007, the state legislature enacted section 224 in accordance with ICWA. Section 224.3 provides: "If the court [or] social worker . . . knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child . . . by interviewing the parents, Indian custodian, and extended family members . . . , contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership in and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (§ 224.3, subd. (c).) "The circumstances that may provide reason to know a child is an Indian child include . . . the following:  [¶]  (1) A person having an interest in the child, including the child . . . or a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1); see also Cal. Rules of Court, rule 5.481(a)(5)(A).) "If the court [or] social worker . . . knows or has reason to know that an Indian child is involved, the social worker . . . shall provide notice" in accordance with ICWA. (§ 224.3, subd. (d); § 224.2, subd. (a).)

5

" 'The Indian status of the child need not be certain to invoke the notice requirement. [Citation.] Because the question of membership rests with each Indian tribe, when the juvenile court knows or has reason to believe the child may be an Indian child, notice must be given to the particular tribe in question or the Secretary [of the Interior].' " (*In re O.K.* (2003) 106 Cal.App.4th 152, 156.) "When it is shown that the court or department knew or had reason to know the child was an Indian child but failed to make an inquiry, we remand with instructions to ensure compliance with ICWA . . . ." (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) "However, both the federal regulations and the California Welfare and Institutions Code require more than a bare suggestion that a child might be an Indian child." (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.) "We review a court's ICWA findings for substantial evidence." (*In re Hunter W.,* at p. 1467.)

Mother contends she provided information suggesting Harmony had Indian heritage through her maternal grandmother sufficient to trigger ICWA's notice requirements. Because ICWA requires notice to the Secretary of the Interior where "the identity or location of the parent or Indian custodian and the tribe cannot be determined" (25 U.S.C. § 1912(a)), mother argues the information she provided was sufficient, even if she could not identify the maternal grandmother's tribe. Though we agree with the premise that in the appropriate case ICWA's notice requirement can be triggered without identifying a specific tribe, we disagree with mother's contention that notice in this case was mandated by the information presented to the juvenile court.

For this appeal, the critical question is whether the evidence was sufficient to sustain the juvenile court's finding that it had no reason to know an Indian child was involved. (25 U.S.C. § 1912(a); §§ 224.2, 224.3.) We conclude it was. The juvenile court recognized mother's claim of possible Indian ancestry triggered a duty to inquire about what mother knew and whether any other person reasonably could be expected to have information about Harmony's possible membership status or eligibility under ICWA. (See § 224.3.) However, when the court questioned mother at the detention hearing, she retreated from the vague assertion made on the Parental Notification of

6

Indian Status form and conceded she knew of no one who was a member nor of anyone who would have information about her family's claimed Indian ancestry. Based on mother's response, the court reasonably concluded mother had no reason to know Harmony had Indian ancestry. Because the maternal grandfather, the paternal grandmother and father also denied Indian heritage, the court found it had no reason to know ICWA would apply. The finding was supported by substantial evidence. (See *In re Hunter W., supra,* 200 Cal.App.4th at p. 1467.)

Our holding is consistent with the conclusions reached by other courts on similar records. In *Hunter W.*, the mother indicated she may have Indian heritage through her father and deceased paternal grandmother. (*In re Hunter W., supra,* 200 Cal.App.4th at p. 1468.) However, she could not identify the tribe or nation, did not know of any relative who was a member, and she could neither provide contact information for her father nor identify any other relative with more information. Based on this record, the court concluded the assertion of possible Indian heritage was "too speculative" to require further inquiry under section 224.3, let alone notice under ICWA. (*Id.* at pp. 1468-1469.) Similarly, in *J.D.*, the paternal grandmother told the Department she may have Indian ancestry, but she conceded she had no information about a possible tribal affiliation nor living relatives who could provide additional information. (*In re J.D., supra,* 189 Cal.App.4th at p. 125.) The *J.D.* court concluded the information was "too vague, attenuated and speculative to give the dependency court any reason to believe the children might be Indian children." (*Ibid.*; see also *In re Jeremiah G., supra,* 172 Cal.App.4th at p. 1521 [juvenile court properly proceeded without ICWA notice after father retracted claim that great-grandfather may have been Indian].) As in *Hunter W.* and *J.D.*, mother's vague assertion of Indian heritage through the maternal grandmother, which she later retracted by her admission that she knew of no one with such heritage nor

7

of anyone with information about her family's claimed Indian ancestry, was too speculative to mandate a finding that ICWA applied.[3]

The fact mother retracted her claim that the maternal grandmother had Indian ancestry distinguishes this case from those mother cites where courts found the information sufficient to trigger ICWA's notice requirements. In *Antoinette S*., the dependency petition indicated the child may be of Indian heritage; however, at the detention hearing, the mother denied she or the father had such heritage and the court proceeded as if ICWA did not apply. (*In re Antoinette S*. (2002) 104 Cal.App.4th 1401, 1404.) Later, the father, who was incarcerated when the child was detained, told a social worker his deceased maternal grandparents had Indian ancestry, though he did not know whether they were members of a tribe. The father never retracted the claim, which the *Antoinette S.* court held was sufficient to trigger ICWA's notice requirements.[4] (*Id.* at pp. 1406-1408.) In *Damian C.*, though the maternal grandfather reported "he had heard his father . . . was Yaqui or Navajo, then heard the family had no Indian heritage," he never retracted the claim and only acknowledged there were conflicting reports. (*In re Damian C*. (2009) 178 Cal.App.4th 192, 199.) The court held this was sufficient to trigger ICWA's notice requirements, particularly with respect to the "federally recognized Navajo and Yaqui tribes because . . . the question of membership in the tribe rests with the tribe itself." (*Ibid.*)

---

[3]     Mother argues the fact she was removed as a minor from her mother, who she claims had Indian ancestry, distinguishes her case from the cases in which courts found the information too speculative to require ICWA notice. This is a distinction without difference. As we explained, the critical question for this appeal is whether the evidence was sufficient to sustain the juvenile court's finding that it had no reason to know Harmony was an Indian child. The fact that mother was removed from the maternal grandmother at an early age did not give the juvenile court any greater reason to know that the grandmother had Indian heritage.

[4]     Though the dependency petition indicated there may be Indian ancestry, *Antoinette S.* does not suggest ICWA notice was required after mother denied such ancestry. On the contrary, it was only after the father later claimed his grandparents were Indian that the court found the notice requirements were triggered. (*In re Antoinette S., supra,* 104 Cal.App.4th at pp. 1407-1408.)

Unlike these cases, mother affirmatively disavowed any knowledge of Indian heritage or tribal membership in response to inquiries made by the juvenile court about her vague claim on the Parental Notification of Indian Status form. Mother also conceded she knew of no one who could provide information about possible Indian ancestry. The evidence was sufficient to sustain the juvenile court's finding that ICWA did not apply.

## DISPOSITION

The juvenile court's order terminating mother's parental rights is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.