Filed 1/27/16  In re S.W. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re S.W., a Person Coming Under the Juvenile Court Law. | B263250 |
| | (Los Angeles County Super. Ct. No. DK01497) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| Sh.W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Terry T. Truong, Judge.  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel for Plaintiff and Respondent.

A Welfare & Institutions Code section 300 petition was filed on behalf of S.W. (born Jun. 2009) and his three siblings in September 2013.[1]  Sh.W. (mother), mother of S.W., appeals from the juvenile court's order terminating her reunification services as to S.W.[2]  She argues that the order must be reversed and the matter remanded to the juvenile court due to the juvenile court's failure to comply with the notice provisions of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA).  We find no error and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

S.W. is the biological child of mother and James B. (father).[3]

On August 4, 2013, the Department of Children and Family Services (DCFS) received a referral alleging an incident of domestic violence between mother and her boyfriend Kendrick G.  The children S.W., T.W., Harmony and Kristin were all present in the home at the time of the dispute.  Kristin called 911, and paramedics transported mother to the hospital.

During the investigation, DCFS received information suggesting that there had been violence between mother and father as well.  When interviewed, S.W.'s siblings told the social worker that mother had been involved in violence with Kendrick but not

---

[1]     All further statutory references are to the Welfare & Institutions Code.

[2]     S.W.'s siblings, Kristin W. (born Sept. 1999), Harmony W. (born Aug. 2001), and T.W. (born Jan. 2004) are not subjects of this appeal.  While the notice of appeal filed by mother on March 9, 2015, references all four children, as a matter of law the notice can only apply to S.W..  The March 9, 2015 notice of appeal indicates that the appeal is from the juvenile court's January 8, 2015 orders terminating mother's reunification services as to all four children.  However, at the January 8, 2015 hearing, section 366.26 permanency planning hearings were scheduled for all three of S.W.'s siblings.  A section 366.26 hearing was not set for S.W., because there existed a substantial probability that S.W. could be returned to his father by the 18-month hearing.  Pursuant to section 366.26, subdivision (l), an order that a hearing pursuant to that section be held is not appealable.  Because a section 366.26 hearing was not set for S.W., the order terminating reunification services made at the January 8, 2015 hearing is appealable as to S.W. only.

[3]     Father is not a party to this action.

with father.  Mother denied all allegations, stating that she had recently moved the family from Chicago to California.

On September 26, 2013, DCFS filed a section 300 petition on behalf of the children, alleging that father physically abused them, that father and mother had a history of domestic violence, that mother frequently left the children home alone at night, and that mother had medically neglected Kristin by failing to obtain necessary medical treatment.  The accompanying detention report noted that on August 5, 2013, mother and father both indicated that they had no ties with Indian ancestry.

At the September 26, 2013 detention hearing, the juvenile court found a prima facie case that the children were described by section 300, detained them from their parents, granted mother monitored visits, and ordered DCFS to provide the parents family reunification services.

The court noted that mother had filed an ICWA-20 form indicating that she may have Apache, Blackfoot, and Crete Indian ancestry.  The court conducted the following inquiry:

"The Court:  You've marked that you have some Indian heritage?

"[Mother]:  Yes.

"The Court:  Are you registered in any of those tribes?

"[Mother]:  We are not registered yet.

"The Court:  So the answer is, 'No?'

"[Mother]:  No.

"The Court:  Are any of the children registered in any of those tribes?

"[Mother]:  No, we're not."

After inquiring as to the possible Indian heritage of the children's respective fathers, the court found, "It's not an ICWA case."

S.W. was placed with a foster parent, and the matter was continued for adjudication.  At the November 1, 2013 jurisdictional hearing, the juvenile court sustained the petition.

On December 12, 2013, the court held a disposition hearing. It declared the children dependents of the juvenile court, removed them from parental custody, granted mother unmonitored visits, and ordered family reunification services.

At the May 15, 2014 six-month review hearing, the juvenile court found that returning the children to mother's custody would create a substantial risk of harm to their physical and emotional wellbeing. The court ordered the children to remain suitably placed. The matter was continued for a 12-month review hearing.

On October 24, 2014, DCFS requested the court issue an order requiring mother's visits to be monitored. The court set the matter for hearing at the 12-month review hearing and ordered mother's visits monitored in the interim.

On November 12, 2014, mother filed a section 388 petition, asking the court to terminate jurisdiction and return the children home. Mother indicated on the petition that she had Cherokee, Apache, Blackfoot, and Crete heritage. The court summarily denied mother's request because it failed to state new evidence or a change of circumstances.

At the November 13, 2014 review hearing, the juvenile court granted the request of DCFS that mother's visits be returned to monitored. The issue of termination of family reunification services was set for hearing in January 2015.

Mother filed a second section 388 petition on November 26, 2014, asking that the juvenile court terminate its jurisdiction and return all four children to mother. On the form, she again indicated her Cherokee, Apache, Blackfoot, and Crete ancestry. The juvenile court again denied mother's request, noting that there was no new evidence or change of circumstances and that the proposed change was not in the best interests of the children. Mother filed a third section 388 petition on January 7, 2015, which was denied for the same reasons.

Mother prepared a status review report response, which was not signed or dated. The document included the following response regarding ICWA:

> "[Sh.W.] family tribes include Wellmen, Mitchell, Blassengame family are registered with the United Cherokee Nation. Originating from North Carolina, Michigan & California as well as Apache & Crete Tribes. [Sh.W.] has not yet registered.

4

"James [B.] Native American Crete family is registered in Chicago[.] James [B.] is not registered."

Mother and father were present for the January 8, 2015, contested 12-month hearing. The court found by clear and convincing evidence that mother's progress had been "partial." However, the court found that father was in substantial compliance and therefore ordered continued reunification services for father and S.W. The court did not believe that mother could complete her services within the remaining weeks before the 18-month date of March 25, 2015, so it terminated services for mother as to all her children. The court then set a date for a section 366.26 hearing for S.W.'s three siblings. The court did not mention the applicability of ICWA.

On March 9, 2015, mother filed a notice of appeal from "[t]ermination of family reunification services 1/8/2015."

On May 21, 2015, the juvenile court placed S.W. with father under the supervision of DCFS, ordered family maintenance services, and granted mother monitored visitation. A section 364 review hearing was set for November 12, 2015.[4]

## DISCUSSION

## I. Standard of review

Where, as here, the trial court has made a finding that ICWA is inapplicable, the finding is reviewed under the substantial evidence standard. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430; *In re Karla C.* (2003) 113 Cal.App.4th 166, 178-179.) Thus, we must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we must indulge all legitimate inferences in favor of affirmance. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.) A juvenile court's ICWA finding is also subject to harmless error analysis. (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 16.)

---

[4]     DCFS filed a motion to take judicial notice of postjudgment evidence, asking that we take notice of the juvenile court's order of May 21, 2015, pursuant to Evidence Code sections 452 and 459. We granted that request.

5

## II. ICWA

ICWA is federal legislation designed to protect American Indian people and their culture. (25 U.S.C. § 1902; *In re Crystal K.* (1990) 226 Cal.App.3d 655, 661.) ICWA applies to all proceedings involving Indian children that may result in an involuntary foster care placement; guardianship or conservatorship placement; custody placement under Family Code section 3041; declaration freeing the child from the custody and control of one or both parents; termination of parental rights; or adoptive placement. (Cal. Rules of Court, rule 5.480.)

An "Indian child" is defined as any unmarried person under the age of 18 who is (1) a member of an Indian tribe; or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224, subd. (c).)

If the court, social worker, or probation officer knows or has reason to know that an Indian child is involved in a dependency proceeding, the social worker or probation officer is required to make further inquiry regarding the possible Indian status of the child as soon as practicable. In a dependency proceeding, there is a continuing duty of the court and DCFS to inquire whether the subject child may be Indian. (See § 224.3, subds. (a), (c).) The social worker or probation officer must interview the parents and extended family members to gather the information required, then contact the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes of which the child may be a member or eligible for membership. (§ 224.3, subd. (c).) The ICWA's notice provisions are strictly construed because the failure to give proper notice of a dependency proceeding to a tribe forecloses participation by the tribe. (*In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1216; *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267.) Thus the failure to provide proper notice is prejudicial error requiring reversal and remand. (*Samuel P.*, at p. 1267.)

In order for the ICWA requirements to be triggered, there must be "more than a bare suggestion that a child might be an Indian child." (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.)

6

### III. Mother's failure to appeal the ICWA finding

DCFS argues that because mother did not reference the ICWA ruling in her notice of appeal filed on March 9, 2015, her appeal should be dismissed.

Appellate court jurisdiction is limited in scope to the notice of appeal and the judgment or order appealed from. (*Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073.) A notice of appeal that specifically designates a judgment or order from which the appeal has been taken is limited to that judgment or order. (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46-47.) However, a notice of appeal must be liberally construed, and should be considered sufficient if it identifies the particular judgment or order being appealed from. (Cal. Rules Court, rule 8.100(a)(2).)

Here, mother's notice of appeal dated March 9, 2015, indicates only that mother was challenging the juvenile court's January 8, 2015 termination of her reunification services. Because the notice omits any reference to ICWA, DCFS argues, we lack jurisdiction to review the issue and the appeal should be dismissed.

Courts of appeal will generally liberally construe notices of appeal from an order terminating parental rights to encompass the denial of a parent's section 388 petition made within 60 days of when the parent filed the notice of appeal. (*In re Madison W.* (2006) 141 Cal.App.4th 1447, 1450-1451.) [5] The same general rule can be applied here, where mother has appealed from an order terminating reunification services. While the juvenile court did not make an ICWA order on January 8, 2015, mother's November 2014 and January 2015 section 388 petitions made reference to possible American Indian heritage. We may interpret the trial court's denial of those section 388 petitions as an

---

[5]    DCFS included in its opening brief an argument that, because the ICWA ruling was made in 2013, mother's March 9, 2015 notice of appeal is not timely as to the ICWA ruling. The issue of whether a parent may raise a challenge to a juvenile court's ICWA ruling made more than 60 days prior to the filing of the appeal is currently under review in the California Supreme Court. (*In re Isaiah W.* (2014) 228 Cal.App.4th 981, 983-988, review granted Oct. 29, 2014.) Because this case should be resolved in an expeditious fashion, DCFS filed a motion to strike this argument from its opening brief. We granted DCFS's motion, therefore we do not address this argument.

implicit denial of any request that the court revisit its prior ICWA ruling. We will therefore liberally construe mother's notice of appeal to include the denial of her section 388 petitions and the ICWA issues raised therein.

**IV. Substantial evidence supported the juvenile court's finding that it had no reason to know that ICWA applied**

In this case, the evidence supported the court's determination that it had no reason to know that S.W. was an Indian child. The California Rules of Court provide the circumstances under which a court has "reason to know" that the child is an Indian child. Those circumstances include:

> "(A) The child or a person having an interest in the child, including an Indian tribe, an Indian organization, an officer of the court, a public or private agency, or a member of the child's extended family, informs or otherwise provides information suggesting that the child is an Indian child to the court . . . ;
>
> "(B) The residence or domicile of the child, the child's parents, or an Indian custodian is or was in a predominantly Indian community; or
>
> "(C) The child or the child's family has received services or benefits from a tribe or services that are available to Indians from tribes or the federal government . . . ."

(Cal. Rules Court, rule 5.481(a)(5).)

None of these circumstances was present here. Mother initially informed DCFS that she had no ties with Indian ancestry. She then submitted a form to the juvenile court suggesting that she may have Apache, Blackfoot, and Crete Indian ancestry. When the juvenile court inquired about mother's Indian heritage at the September 26, 2013 detention hearing, she admitted that neither she, nor the children, nor the children's respective fathers, were registered members of any Indian tribe. Mother provided no names of any family members who might provide further information. This information was insufficient to trigger ICWA notice requirements. Under the circumstances, the court properly concluded it had no reason to believe that S.W. was an Indian child.

8

Mother's subsequent section 388 petitions provided no further specific family information. Her unsigned status review report response did provide some family names as well as tribal information, but did not provide the complete name of any ancestor who was a member of a specific tribe. Nor did she provide any information suggesting that any specific relative ever lived in Indian territory or received benefits from any tribe. Thus, this supplemental information was still insufficient to trigger ICWA notice requirements.

Courts have recognized that the requirements of ICWA are not implicated when the possibility that a child has Indian ancestry is based on vague information. For example, in *In re O.K.* (2003) 106 Cal.App.4th 152, ICWA notice was sent to the Bureau of Indian Affairs based on the mother's statement that she "'may be of Native American [h]eritage.'" (*Id.* at p. 154.) The notice was returned because it contained "'[i]nsufficient identifying tribal information.'" (*Ibid.*) At the section 366.26 hearing, the paternal grandmother further informed the court, "'the young man may have Indian in him. I don't know my family history that much, but where were [*sic*] from it is that section so I don't know about checking that.'" (*Id.* at p. 155.) Under these circumstances, the trial court's finding that there was no reason to believe the child was Indian was affirmed on appeal.

Similarly, in *In re Z.N.* (2009) 181 Cal.App.4th 282 (*Z.N.*), mother had stated her belief that one of her grandmothers was Cherokee and another part Apache. The specific tribes were unidentified. Mother reported that she was not registered and did not believe her mother established any tribal affiliation. In affirming the trial court's determination that tribal notice was not necessary, the court stated:

> "Whatever the status of the grandmothers, they were great-grandmothers of the twins, and this information did not suggest that the twins were members or eligible for membership as children of a member. We agree . . . that this did not trigger a duty to notify tribes. Thus there was no error."

(*Z.N., supra*, 181 Cal.App.4th at p. 298.)

The facts of *Z.N.* are analogous to the matter before us. Mother believed she may have Cherokee, Apache and Crete ancestry, but had no specific information regarding eligibility for membership in any tribe. As in *Z.N.*, this did not trigger a duty to notify any tribes. (See also *In re J.D.* (2010) 189 Cal.App.4th 118, 125 [paternal grandmother's belief that she had Native American ancestry was "too vague, attenuated and speculative to give the dependency court any reason to believe the children might be Indian children"].) We find that the juvenile court's finding is supported by the record, and no error occurred.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                                      CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST