Filed 10/27/22  In re S.P. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re S.P., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.G.,<br><br>Defendant and Appellant. | D080746<br><br>(Super. Ct. No. J521011) |

APPEAL from an order of the Superior Court of San Diego County, Marissa A. Bejarano, Judge.  Conditionally reversed and remanded with directions.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia Silva, County Counsel, Dana Shoffner, Senior Deputy County Counsel, for Plaintiff and Respondent.

J.G. (Mother) appeals from the juvenile court's jurisdictional and dispositional order declaring her minor daughter, S.P., a dependent and

removing her from Mother and J.P.'s (Father) custody.[1]  Mother's sole claim on appeal is that the San Diego County Health and Human Services Agency (the Agency) failed to comply with its further inquiry duty under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.), and thus, substantial evidence does not support the juvenile court's finding that ICWA did not apply to S.P.'s juvenile dependency proceedings.  The Agency concedes error and that a limited remand is necessary, and the parties stipulate to the immediate issuance of remittitur.  Because we agree that the Agency's inquiry was deficient, we accept the Agency's concession, conditionally reverse, and remand for compliance with ICWA.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In April 2022, the Agency initiated these dependency proceedings under Welfare and Institutions Code section 300 subdivision (b)(1)[3] on behalf of S.P.  The Agency alleged that there was a substantial risk S.P. had suffered or would suffer serious physical harm or illness based on Mother's attempt to hit Father with her car while S.P. was in the vehicle, Mother and Father's domestic violence history, Mother's mental illness, and Father's admitted methamphetamine use.

The same month, Mother and Father filed completed ICWA-020 forms. In their respective forms, Mother indicated that she did not have any known Native American ancestry, and Father indicated that he might have Blackfoot ancestry.

---

[1]  Father is not a party to this appeal, and we discuss him only as needed.

[2]  Because Mother's only contention on appeal concerns ICWA, we limit our factual background accordingly.

[3]  All further section references are to the Welfare and Institutions Code unless otherwise indicated.

At the April 2022 detention hearing, the juvenile court stated that it had received Mother and Father's ICWA-020 forms. Father's counsel stated that Father claimed Blackfoot and Cherokee ancestry. The court asked paternal grandfather, who was present at the hearing, about his Native American ancestry. Paternal grandfather stated that his great-great-grandmother had Cherokee ancestry and that she "belonged to the Cherokee Nation," but in response to the court's questions, he stated that he did not know whether any family members participated in tribal activities, lived on a reservation, or were enrolled tribal members. Because paternal grandfather did not know the name of his great-great-grandmother, the court asked him to make some calls or contact family to try to determine her name so that the appropriate tribes could be noticed of S.P.'s dependency proceedings.

The court asked the same questions of paternal step-grandmother, who was also present. Paternal step-grandmother denied having any Native American ancestry or knowing of any family members who participated in tribal activities, lived on a reservation, or were enrolled tribal members. The court deferred making an ICWA finding until more information could be obtained to notice the Cherokee and Blackfoot tribes claimed by paternal grandfather and Father.

In its May 2022 jurisdiction/disposition report, the Agency reported that, after the detention hearing, Mother claimed Choctaw ancestry through her maternal great-grandfather. Maternal grandmother also reported possible Choctaw or Chickasaw ancestry but denied that any relatives had lived on a reservation or been enrolled with a tribe. Maternal aunt reported Choctaw and Cherokee ancestry but denied knowing of any relatives enrolled in a tribe and said that she was not sure if any relatives had lived on a

3

reservation. Maternal grandfather denied having any Native American ancestry.

Two days after Mother's Choctaw ancestry claim, Mother denied any Native American ancestry. Father reported that he did not have any Blackfoot ancestry and "was just being silly" when he claimed Blackfoot heritage.

The Agency reported that it both mailed inquiry letters and emailed inquiries to seven tribes (Cherokee and Choctaw) and to a Blackfoot tribe. The Agency additionally sent letters to 20 potential relatives notifying them of S.P.'s judicial dependency proceedings. The Agency's report does not indicate if the letters asked about possible Native American ancestry.

At the May 9, 2022 jurisdiction/disposition hearing, the Agency asked the juvenile court to defer making its ICWA finding because, although it had followed up with all relatives about ICWA, it was still informally inquiring with the tribes. S.P.'s counsel asked that the Agency assess a maternal aunt, A.C., for placement. There is no indication in the record on appeal that the Agency or court ever asked A.C. about possible Native American ancestry. Moreover, as the Agency concedes, there is no documentation in the record on appeal about which family members were interviewed about ICWA and which family members provided the ancestry information that the Agency shared with the tribes during its mailed and emailed inquiries.

By July 5, 2022, the Agency had received responses from all eight tribes indicating that, based on the ancestry information provided by the Agency, S.P. was either not eligible for membership or did not have any heritage with that particular tribe.

4

At the July 11, 2022 pretrial status conference, the juvenile court found that the Agency's report reflected its diligent efforts and inquiry with numerous tribes and that the Agency had met its burden under ICWA.

At the contested jurisdiction and disposition hearing, the juvenile court again found that the Agency "conducted reasonable efforts and conducted an inquiry appropriate as required under [ICWA]" and that ICWA did not apply. The court adopted the Agency's recommendations from its May 9, 2022 report, including sustaining the Agency's section 300, subdivision (b) petition, finding S.P. to be a dependent of the court, and removing S.P. from Mother and Father's custody. Mother appealed from the court's jurisdictional and dispositional order, challenging only the court's ICWA finding.

## DISCUSSION

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice

5

requirements of section 224.3 apply."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)

A juvenile court finding that ICWA is inapplicable generally implies that the Agency has fulfilled its inquiry duty.  (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*) [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].)  (*Id.* at p. 885.)  We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied."  (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

Mother contends, and the Agency concedes, that substantial evidence does not support the juvenile court's finding that ICWA did not apply to S.P.'s juvenile dependency proceedings.  We agree.  Paternal grandfather's, Mother's, maternal grandmother's, and maternal aunt's Native American ancestry claims constituted "information suggesting" that S.P. "is a member or may be eligible for membership in an Indian tribe," triggering the Agency's duty of further inquiry.  (§ 224.2, subd. (e)(1) ["There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."]; (§ 224.2, subd. (e)(1); see e.g., *In re Rylei S.* (2022) 81 Cal.App.5th 309, 314, 319 [mother's statement on ICWA-020 form that she "may have" Cherokee heritage on maternal grandfather's side triggered duty of further inquiry]; *In re T.G.* (2020) 58 Cal.App.5th 275, 294–297 [broadly interpreting "reason to believe" to conclude that mother's claim of Native American ancestry on her maternal side triggered duty of further inquiry];

6

see also *In re I.F.* (2022) 77 Cal.App.5th 152, 163 [noting that synonyms for the word "suggest" as used in § 224.2, subd. (a)(1) include "imply," "hint," "intimate," and "insinuate"].)

Mother's later denial of Native American ancestry does not extinguish the Agency's duty of further inquiry, particularly where the record does not indicate any basis for Mother's changed response.[4] (See e.g., *In re Josiah T.* (2021) 71 Cal.App.5th 388, 404–405 [further inquiry required when paternal grandmother disclosed and later denied Cherokee ancestry: "a mere change in reporting, without more, is not an automatic ICWA free pass; when there is a conflict in the evidence and no supporting information, [the Agency] may not rely on the denial alone without making some effort to clarify the relative's claim"]; see also *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650 [" 'parents may be unsure or unknowledgeable of their own status as a member of a tribe' "], disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 637, fn. 6.)

The duty of further inquiry includes, "but is not limited to," interviewing extended family members to gather the biographical information required by section 224.3, subdivision (a)(5), to be included in ICWA notices; contacting the Bureau of Indian Affairs (BIA) and State

---

[4]    In contrast, to the extent Mother contends that the Agency did not satisfy its further inquiry duty as to Father's Blackfoot ancestry claim, we disagree.  The record does not reflect that any other paternal relatives claimed Blackfoot ancestry, and upon further inquiry, Father explained his later denial by stating that he was "just being silly" in claiming this heritage. (See e.g., *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514 [affirming court's finding that ICWA did not apply where father stated at a hearing that he might have some Native American heritage but needed to do further research, later denied heritage, and indicated upon further inquiry that he initially thought he might have Native American heritage but no longer did].)

Department of Social Services; and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)-(C).) Contact with a tribe, for the purpose of fulfilling the Agency's duty of further inquiry, "shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under [ICWA]" and "include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Id.* at subd. (e)(2)(C).)

Here, the record on appeal reflects that the Agency informally inquired of eight tribes. Yet, the record is devoid of documentation reflecting that the Agency conducted further inquiries about S.P.'s ICWA status with all available maternal and paternal extended family members, much less with the particular family members who initially claimed Native American ancestry. Indeed, it is also unclear whether paternal grandfather ever identified—as requested by the juvenile court—his great-great-grandmother through whom he claimed Cherokee ancestry. There is also no indication that the Agency gathered all available information enumerated in section 224.3, subdivision (a)(5), or that the Agency ever contacted the BIA and State Department of Social Services for assistance in identifying the names and contact information of the tribes with which S.P. might be eligible for membership. (§ 224.2, subd. (e)(2)(B)-(C).) Accordingly, we conclude that

8

substantial evidence does not support the juvenile court's finding that ICWA did not apply.[5]

As Mother contends and the Agency implicitly concedes, we further conclude that the error was prejudicial because maternal and paternal relatives claimed Native American ancestry. (See, e.g., *In re Y.M.* (2022) 82 Cal.App.5th 901 [adopting ICWA prejudicial error standard set forth in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*)]; *Benjamin M., supra,* at p. 744 [ICWA inquiry error was prejudicial where missing information was "readily obtainable" and "likely to bear meaningfully upon whether the child is an Indian child."].)

The Agency and Mother agree that a limited remand is appropriate to ensure compliance with the inquiry provisions of ICWA and section 224.2. The Agency and Mother also submitted a joint stipulation for issuance of an immediate remittitur pursuant to California Rules of Court, rule 8.272(c)(1). Therefore, we conditionally reverse the jurisdictional and dispositional order

---

[5]    Although Mother's appeal challenges only the sufficiency of the Agency's further inquiry, we note that the record before us also suggests the Agency's initial inquiry was incomplete. For example, there is no indication that the Agency ever conducted an ICWA inquiry with maternal aunt, A.C., with whom S.P.'s counsel sought placement. (See *D.S., supra,* 46 Cal.App.5th at pp. 1048–1049 [initial inquiry includes asking all extended family members about possible Native American ancestry]; 25 U.S.C. § 1903(2); § 224.1, subd. (c) [extended family member "defined as provided in [§] 1903" of ICWA].) On remand and as directed in our disposition, the Agency and juvenile court must ensure that all inquiry duties under ICWA are satisfied. (See § 224.2, subd. (a) [the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child]; see *Isaiah W., supra,* 1 Cal.5th at p. 9.)

with a limited remand for the Agency and juvenile court to comply with ICWA and section 224.2.[6]

DISPOSITION

The juvenile court's jurisdictional and dispositional order is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and section 224.2 (and, if applicable, the notice provisions under section 224.3). If, after completing its inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know that S.P. is an Indian child, the jurisdictional and dispositional order shall be reinstated. If the Agency or the juvenile court has reason to believe or reason to know S.P. is an Indian child, the juvenile court shall proceed accordingly. The remittitur shall issue immediately.

---

[6] Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8).) The present case involves reversible error because the parties agree, and we concur, that the Agency failed to comply with ICWA and related California provisions. Because this case would be subject to reversal to permit compliance with ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the interests identified by Code of Civil Procedure section 128, subdivision (a)(8). (See *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379–382.)

10

McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


BUCHANAN, J.

11