Filed 9/30/20; Certified for publication 10/6/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Dominic F. et al., Persons Coming Under the Juvenile Court Law. | B302482 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19LJJP00406A–C) |
| Plaintiff and Respondent, | |
| v. | |
| M.B., | |
| Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, Steven E. Ipson, Referee.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

M.B. (Mother) challenges the juvenile court's jurisdictional findings and dispositional orders made October 16, 2019. On appeal, she does not contest the merits of the court's adjudication; instead, her sole contention is that reversal is warranted because the juvenile court and Department of Children and Family Services (DCFS) failed to satisfy the formal notice requirements under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code,[1] § 224 et seq.).

We find the juvenile court did not err in finding that ICWA does not apply, and accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the failure to comply with the formal notice requirements of ICWA is the sole basis for Mother's appeal, we recite only those facts pertinent to her claim.

On June 17, 2019, DCFS filed a petition on behalf of minors D.F., G.F., and B.F., pursuant to section 300, subdivisions (a) and (b)(1).

At the detention hearings on June 18 and 19, 2019, the juvenile court ordered the minors removed from both parents' care and placed with DCFS. The juvenile court reviewed the Parental Notification of Indian Status (Judicial Council form ICWA-020) filed by each parent. The juvenile court stated Father indicated he has "no Indian ancestry" in his ICWA-020 form. Mother had marked the checkbox indicating she "may have Indian ancestry" and handwrote "unknown tribe name from New

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

Mexico" on her ICWA-020 form.[2]  The juvenile court instructed DCFS:  "To the extent the Department can begin an investigation for that understanding, I ask that you look into it.  But all it says is 'unknown tribe.' "

In the jurisdiction/disposition report filed July 8, 2019, DCFS apprised the court of its "ICWA updates."  The social worker (SW) had contacted maternal grandfather.  He reported "his family believed they were of [N]ative American descent, but that it was never proven."  He said his "family was out of New York" so "it could be from that area."

The SW next contacted maternal grandmother (MGM), who said her mother did not have Native American heritage and was of Irish and Welsh descent.  However, MGM said her paternal grandmother—i.e., the minors' maternal great-great grandmother (MGG-GM)—was "part [N]ative American."  MGM recalled MGG-GM was born in New Mexico.

The SW contacted Mother.  Mother said her great grandmother (again, the same MGG-GM) was adopted, and asserted she was "full native" although "nothing had been

---

[2]  The form includes four other checkboxes that provide:

   a) "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe."
   b) "The child is or may be a member of, or eligible for membership in, a federally recognized Indian tribe."
   c) "I have no Indian ancestry as far as I know."
   d) "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe."

   Mother left these checkboxes blank.

checked before she passed [away]." Mother mentioned her sister—i.e., maternal aunt (MA)—has children who "receiv[ed] benefits" but was unsure if it was through MA's husband—who is not biologically related to the children subject to this appeal. Mother stated her male cousin also believed he had Cherokee heritage from his own father, but that he similarly was "unrelated" to Mother's side of the family.

The SW looked up a list of federally-recognized tribes in the areas Mother and her relatives had mentioned—New Mexico and New York—and sent ICWA notices[3] via certified mail to 21 tribes in New Mexico, nine tribes in New York, and the Bureau of Indian Affairs.

On August 6, 2019, DCFS informed the court it received ICWA response letters from 11 tribes, indicating the children were not enrolled members and are not eligible for enrollment as members of their respective tribes; copies of the response letters DCFS received were provided to the court.

On August 16, 2019, DCFS informed the court it received ICWA response letters from four more tribes, and provided copies thereof, all indicating the children were neither members nor eligible for membership in their respective tribes.

And on October 11, 2019, DCFS provided the court with the response letters it received from nine more tribes, again all indicating the children were neither members nor eligible for membership.

At the October 16, 2019 jurisdictional and disposition hearing, DCFS informed the court it had been "over 60 days"

---

[3]    The record on appeal and in the trial court does not contain the actual ICWA notices sent by DCFS.

4

since it received responses from the tribes indicating the children are neither tribal members nor eligible for membership. DCFS requested the court find ICWA did not apply to the three children. The juvenile court agreed and found ICWA did not apply. The court then sustained two allegations in the petition pursuant to section 300, subdivision (b) and dismissed the remaining allegations.

The minors were declared dependent children of the court under section 300, subdivision (b); were ordered removed from the home, custody, and care of Mother and Father; and were placed with DCFS. Mother and Father were allowed monitored visitation, and DCFS was given discretion to liberalize.

Mother timely filed a notice of appeal.

## DISCUSSION

The sole issue raised by Mother on appeal is whether the juvenile court complied with ICWA's formal notice requirements, which become applicable once a court has determined there is "reason to know" the subject minors are Indian children. Mother argues although DCFS "impressively investigated" Mother's claim of possible Native American ancestry, its "fail[ure] to file the actual notices it sent to the tribes with the juvenile court" precluded the court from determining whether proper notice under ICWA was given. She contends the court thus erred by concluding ICWA did not apply as it had "not review[ed] the content of the notices" and "had insufficient information to reach that conclusion."

DCFS disagrees and argues the vague statements about possible Indian heritage from Mother and maternal grandparents did not rise to the level of information indicating that the

5

children are Indian children, and thus, did not trigger the formal notice provisions of ICWA.

We agree with DCFS. Based on the record, recent changes to the law and case precedent, we find no error by the juvenile court and we conclude substantial evidence supports its finding that ICWA does not apply.

A. *Standard of Review*

"[W]here the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051 (*D.S.*); accord, *In re A.M.* (2020) 47 Cal.App.5th 303, 314 (*A.M.*).) However, "we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." (*A.M.*, at p. 314; accord, *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*).) The appellant—in this case, Mother—has the burden to show the evidence was not sufficient to support the ICWA finding. (*Austin J.*, at p. 885.)

B. *Applicable Law*

ICWA[4] reflects "a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal

---

[4] Our state Legislature incorporated ICWA's requirements into California statutory law in 2006. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

6

standards that a state court . . . must follow before removing an Indian child from his or her family." (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 881–882.) Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe, or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a) and (b) [incorporating federal definitions].)

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12 (*Isaiah W.*).) This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. Although we discuss all three phases, it is only the last phase, the duty to provide formal ICWA notice, that is at issue here.

1. Initial Duty to Inquire

The *duty to inquire* whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that jumpstarts DCFS investigation. (§ 224.2, subd. (a).) DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (*Id.*, subd. (b).) Similarly, the juvenile court must inquire at each parent's *first* appearance whether he or she "knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).). The juvenile court must also require each parent to complete Judicial Council form

7

ICWA-020, Parental Notification of Indian Status.  (Cal. Rules of Court,[5] rule 5.481(a)(2)(C).)  The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child."  (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)

      2.     <u>Duty of Further Inquiry</u>

As discussed in two recent cases, *Austin J.*, *supra*, 47 Cal.App.5th at pages 883–884 and *D.S.*, *supra*, 46 Cal.App.5th at pages 1048–1049, a duty of *further inquiry* is imposed when DCFS or the juvenile court has "*reason to believe* that an Indian child is involved" in the proceedings.  (§ 224.2, subd. (e), italics added.)  The Legislature did not define what constitutes "reason to believe."  (See *ibid.*)

*Further inquiry* as to the possible Indian status of the child includes:  1) interviewing the parents and extended family members to gather required information[6]; 2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership in; and 3) contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership or eligibility.

---

[5]     All further rule references are to the California Rules of Court unless otherwise stated.

[6]     This required information includes:  All known names of the Indian child, biological parents, grandparents, and great-grandparents, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information.  (§ 224.3, subd. (a)(5).)

(§§ 224.2, subds. (e)(1)–(3) & 224.3, subds. (a)(5)(A)–(C); rule 5.481(a)(4) [sets forth same requirements].)  Contact with a tribe must include, at a minimum, "telephone, facsimile, or electronic mail contact to each tribe's designated agent" and include information "necessary for the tribe to make a membership or eligibility determination."  (§ 224.2, subd. (e)(3).)

      3.      <u>Duty to Provide ICWA Notice</u>

"The sharing of information with tribes at [the further] inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child."  (*D.S.*, *supra*, 46 Cal.App.5th at p. 1049.)  While "reason to believe" is not defined, fortunately the term "reason to know" is defined by ICWA and its related California statute.

Under ICWA, the juvenile court has "reason to know" a child is an Indian child if one of six circumstances is present:  "(1) Any participant in the proceeding . . . informs the court that the child is an Indian child; [¶] (2) Any participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child; [¶] (3) The child . . . gives the court reason to know he or she is an Indian child; [¶] (4) The court is informed that the domicile or residence of the child, [or] the child's parent . . . is on a reservation or in an Alaska Native village; [¶] (5) The court is informed that the child is or has been a ward of a Tribal court; or [¶] (6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe."  (25 C.F.R. § 23.107(c).)

Effective January 1, 2019, Assembly Bill No. 3176 (2017-2018 Reg. Sess.) amended the definition in section 224.2, subdivision (d), of when the court has *reason to know* a child is an Indian child—conforming California law to ICWA regulations.[7] Thus, as of January 1, 2019, section 224.2, subdivision (d)(1) through (d)(6) include the same six criteria as those under the federal regulations, in determining whether there is "reason to know" the child involved is an Indian child.

Once DCFS or the juvenile court has a *reason to know* an Indian child is involved, notice pursuant to ICWA must be sent to the pertinent tribe(s) via registered or certified mail. (§ 224.3, subd. (a)(1).) The notice must contain sufficient information to enable the tribe to "conduct a meaningful review of its records to determine the child's eligibility for membership." (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.) The required information includes the names, birthdates, birthplaces, and tribal enrollment information of the parents and other direct lineal ancestors of the child, such as grandparents. (§ 224.3, subd. (a)(5)(C).)

---

[7] Prior to this amendment, the juvenile court or DCFS had "reason to know" the child was an Indian child if it was provided "information *suggesting* the child is a member of a tribe or eligible for membership . . . or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (See former § 224.3, subd. (b)(1), italics added; see Stats. 2018, ch. 833, §§ 5–6, pp. 9–11.) Also prior to this amendment, the duty of further inquiry was triggered once the court or DCFS had "*reason to know*" (see former § 224.3, subd. (c), italics added), whereas now, the duty of further inquiry is commenced once the court or DCFS has "*reason to believe*" (see § 224.2, subd. (e), italics added).

10

It is this "notice requirement, which . . . enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*Isaiah W.*, *supra*, 1 Cal.5th at p. 5.) Thus, the juvenile court "has a responsibility to ascertain that [DCFS] has conducted an adequate investigation and cannot simply sign off on the notice as legally adequate without doing so." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.)

C.    *Analysis* [8]

As the facts before us are not disputed, we independently determine whether ICWA's requirements were met. To do so, we first must determine whether—as a result of their initial inquiry— DCFS or the juvenile court had "reason to believe" the children were Indian children, requiring *further inquiry* of possible Indian heritage. If further inquiry was required, we then determine whether DCFS and the juvenile court had "reason to know" the children were Indian children, necessitating formal notice to pertinent tribes. We review the record for substantial evidence in support of the juvenile court's finding that ICWA did not apply.

---

[8]    As a preliminary matter, we note that the juvenile court's October 16, 2019 findings and orders from which Mother appeals occurred after the effective date of the amendments to section 224.3, so the amended provisions apply here. (See *A.M.*, *supra*, 47 Cal.App.5th at p. 321 ["Since Mother is appealing from the findings made at the September 6, 2019 . . . hearing . . . , the current ICWA statutes apply."].)

11

1.    Initial Inquiry

Section 224.2, subdivisions (a), (b), and (c), impose an initial duty of inquiry upon DCFS and the juvenile court, i.e., to ask all relevant involved persons whether the child may be an Indian child.  (§ 224.2, subs. (a)–(c).)  In the case before us, the juvenile court conducted its initial inquiry as to whether D.F., G.F., and B.F. are Indian children during Mother's and Father's first appearance at the June 2019 detention hearings.  The court reviewed the ICWA-020 forms submitted by each parent.  After noting Father indicated no Indian ancestry, the court stated Mother indicated she "may" have Indian ancestry from an "unknown tribe from New Mexico."  The court asked DCFS to "look into it" and "begin an investigation."

DCFS argues Mother's statement that she "may" have Indian ancestry, at most, suggested a mere possibility of Indian ancestry.  DCFS contends the duty of further inquiry was not triggered.

We disagree.  Based on representations by Mother that she may have Indian heritage from a tribe in New Mexico, the court correctly ordered DCFS to further inquire into Mother's claim and investigate the allegation.

This is similar to the circumstances in *D.S.*, where after reviewing the ICWA-020 form submitted by D.S.'s aunt, stating she *may* have Indian ancestry with the Blackfoot tribe in Delaware, the court ordered DCFS to further inquire.  (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1046, 1054.)  Based on representations that D.S.'s father may have Indian heritage, the court ordered DCFS "to investigate the allegation."  (*Id.* at p. 1046.)  "Aunt's statements regarding possible tribal affiliation were sufficient to establish a reason to believe" and "triggered a

12

duty to conduct a further inquiry." (*Id.* at p. 1052.) And indeed, DCFS proceeded to conduct a further inquiry in *D.S.* by contacting the identified tribes. (*Id.* at p. 1047.)

While Mother in the case before us did not identify a specific tribe, she did specify it was a tribe from New Mexico, and similar to the aunt's ICWA-020 form in *D.S.*, stated she *may* have Indian ancestry in her respective ICWA-020. We find this information is specific enough to trigger the duty of further inquiry. The initial inquiry conducted by the juvenile court here created a "*reason to believe*" the children possibly are Indian children. This explains why the juvenile court ordered DCFS to "look into it" and start an investigation, similar to what the juvenile court did in *D.S.* (*D.S., supra,* 46 Cal.App.5th at p. 1046.)

> 2. Duty of Further Inquiry

DCFS proceeded to conduct a further inquiry.

As discussed *ante*, pursuant to section 224.2, subdivision (e), when DCFS has a "reason to believe," it must satisfy three requirements—contacting the extended family, contacting the Bureau of Indian Affairs, and contacting the relevant tribes. Here, DCFS interviewed Mother, maternal grandfather, maternal grandmother, and other family members, in accordance with section 224.2, subdivision (e)(1). Mother's parents and sibling are among those "extended family members" whom DCFS interviewed in gathering information to determine whether the proceeding involves an Indian child. (See Cal. Rules of Court, rule 5.481(a)(4)(A); 25 U.S.C. § 1903(2).)

13

DCFS learned that maternal grandfather's family "believed they were of [N]ative American descent," possibly from New York, "but that it was never proven." DCFS also learned that MGG-GM, born in New Mexico, was "part [N]ative American."

DCFS contacted the Bureau of Indian Affairs (in accordance with § 224.2, subd. (e)(2)) and—because neither Mother nor maternal relatives could identify one specific tribe—sent correspondence via certified mail to 21 tribes in New Mexico and nine tribes in New York to further inquire (in accordance with § 224.2, subd. (e)(3)). Based on the record before us, we find DCFS made a good faith effort to gather information about the children's membership status or eligibility. DCFS's inquiry obligation is "not an absolute duty to ascertain or refute Native American ancestry." (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1413.) Mother herself commented in her opening brief that DCFS "impressively investigated" her claims of possible Indian heritage, and conceded in her reply brief that DCFS "satisfied its duty of further inquiry when it identified 29 federally-recognized tribes, which the social worker contacted by mail."

DCFS's repeated efforts to gather information concerning the children's maternal ancestry constitutes substantial evidence that DCFS met its duty of further inquiry.

### 3. Duty to Provide Formal ICWA Notice

This is the only phase where Mother argues the juvenile court erred. Note DCFS is "not required to 'cast about' for information or pursue unproductive investigative leads." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1053.) "There are two separate ICWA requirements which are sometimes conflated: the obligation to give notice to a tribe, and the obligation to conduct further inquiry to determine whether notice is necessary. Notice to a

14

tribe is required, under federal and state law, when the court knows or has reason to know the child *is* an Indian child." (*A.M.*, *supra*, 47 Cal.App.5th at p. 315.)

Here, we conclude the juvenile court and DCFS's further investigation did not yield results that pushed their *reason to believe* the children are Indian children, to *reason to know* the children are Indian children. The juvenile court may find ICWA does not apply following "proper and adequate further inquiry and due diligence" by DCFS because "there is no reason to know whether the child is an Indian child" or because "the court does not have sufficient evidence to determine that the child is or is not an Indian child." (§ 224.2, subds. (i)(2) and (g).)

We believe that is exactly what happened here. DCFS conducted its further inquiry and apprised the court of its progress. DCFS detailed the information gathered from its interviews with Mother and maternal relatives in the reports and Last Minute Informations filed with the court. DCFS additionally provided the court with copies of the responses it received from 24 tribes indicating the children are not Indian children. Having learned of no new information—either from Mother, her relatives, or the relevant tribes—that would give DCFS a "reason to know" the children are Indian children, DCFS informed the juvenile court during adjudication that it had been "over 60 days" since it received letters from the tribes indicating the children are not members. At most, after further inquiry, the court was left with the same nonspecific information it was provided at the initial appearance—only a suggestion that the children may have Indian ancestry.

A suggestion of Indian ancestry is not sufficient under ICWA or related California law to trigger the notice requirement.

15

(*Austin J.*, *supra*, 47 Cal.App.5th at pp. 886–887; *A.M.*, *supra*, 47 Cal.App.5th at p. 322.)  As our colleagues from Division One explained on similar facts in *Austin J.*:  "At most, these statements merely suggest the possibility the children may have Cherokee ancestry; Indian ancestry, however, is not among the statutory criteria for determining whether there is a *reason to know* a child is an Indian child.  The statements, therefore, do not constitute information that a child 'is an Indian child' or information indicating that the child is an Indian child, as is now required under both California and federal law." (*Austin J.*, at p. 887, italics added.)

The reviewing court in *A.M.* similarly found:  "[T]he only specific information Mother provided was a statement that she was told and believed that she may have Indian ancestry with the Blackfeet and Cherokee tribes but was not registered." (*A.M.*, *supra*, 47 Cal.App.5th at p. 322.)  It further found:  "At most, Mother had provided information indicating she may have Indian heritage.  Although it would follow that the children might also have some Indian heritage, the information Mother provided . . . did not rise to the level of 'information indicating that the child[ren] [are] . . . Indian child[ren].' " (*Id*. at p. 321.)  If there is " 'insufficient reason to believe a child is an Indian child, notice need not be given.' " (*In re Jeremiah G*. (2009) 172 Cal.App.4th 1514, 1520.)  Here, DCFS's further inquiry did not result in a *reason to know* the children are Indian children.  We conclude the court's finding that ICWA does not apply to the children is supported by substantial evidence.  There was no obligation to give formal notice to the tribes and to file that notice with the court.

Finally, in the analysis portion of her opening brief, Mother cites and refers to a number of cases decided before the Legislature enacted changes to California's ICWA-related statutes. "Cases relying on such language are no longer controlling or persuasive on this point." (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885.)

Based on the foregoing, because DCFS was not required to provide formal notice to the pertinent tribes, we do not reach Mother's argument that the ICWA notices may have lacked necessary information.

## DISPOSITION

The October 16, 2019 findings and orders are affirmed.

STRATTON, J.

We concur:

GRIMES, Acting P. J.

WILEY, J.

17

Filed 10/6/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Dominic F. et al., Persons Coming Under the Juvenile Court Law.<br><br>_____<br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.B.,<br><br>    Defendant and Appellant. | B302482<br><br>(Los Angeles County Super. Ct. No. 19LJJP00406A–C)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

     The opinion in the above-entitled matter filed on September 30, 2020, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

     There is no change in the judgment.

_____

GRIMES, Acting P. J.            STRATTON, J.            WILEY, J